IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| SOPHIA BALOW, AVA BOUTROUS, JULIA COFFMAN, KYLIE GOIT, EMMA INCH, SHERIDAN PHALEN, MADELINE REILLY, OLIVIA STARZOMSKI, SARAH ZOFCHAK, TAYLOR ARNOLD, and ELISE TURKE, Individually and on behalf of all those similarly situated, <br> Plaintiffs, <br><br> v. <br><br> MICHIGAN STATE UNIVERSITY, MICHIGAN STATE UNIVERSITY BOARD OF TRUSTEES, SAMUEL L. STANLEY JR. and BILL BEEKMAN, <br><br> Defendants. | CIVIL ACTION NO. <br><br><br> COMPLAINT AND JURY DEMAND <br><br> January 15, 2021 |

NEWKIRK ZWAGERMAN, PLC
Jill Zwagerman, AT0000324
Lori Bullock AT0012240
Danya Keller AT0012300
Attorney for Plaintiffs
521 E. Locust Street, Suite 300
Des Moines, IA 50309
Telephone: (515) 883-2000
Fax: (515) 883-2004
jzwagerman@newkirklaw.com
dkeller@newkirklaw.com
lbullock@newkirklaw.com

1

BOGAS & KONCIUS, PC
BRIAN E. KONCIUS (P69278)
Local Counsel for Plaintiffs
31700 Telegraph Road, Suite 160
Bingham Farms, MI 48025
Telephone: (248) 502-5001
bkoncius@kbogaslaw.com

## **INTRODUCTION**

This is an action based on long-standing and ongoing violations of Title IX of the Education Amendments of 1972 by Michigan State University, its Director of Athletics, President, and Board of Trustees (collectively "Defendants" or "MSU"). On October 22, 2020, MSU announced its decision to eliminate its women's swimming and diving team at the end of the 2020–2021 academic year. Although entirely consistent with the manner in which MSU has discriminated against female athletes in the past, the decision to disband the teams nevertheless came as a surprise to the student athletes and their coaches.

The decision to end the women's swimming and diving team at MSU has left the players in limbo. The female student athletes could stay at MSU and keep their scholarships.  However, these women are athletes who trained from an early age to compete in swimming and diving, were recruited by MSU to compete in swimming and diving, and turned down other universities across the country in order to compete in swimming and diving at MSU.  The choice to stay and forgo their dream is not a real choice or a viable option for these Plaintiffs, nor is it a fair

choice to ask of these student athletes who have given so much of their time, effort, blood, sweat, and tears to their sports and the university that betrayed their trust.

Because MSU persists in its misconduct, this action is brought by the female swimmers and divers in their individual capacities, as well as on behalf of all similarly situated student athletes now and in the future, to redress the undisputed historic and ongoing discriminatory conduct perpetrated by MSU.

## STATEMENT OF THE CASE

1.      MSU discriminates against women on the basis of sex by, among other things, providing substantially fewer and poorer opportunities for women in sports than for male students.

2.      If permitted to go through with its intended plan, MSU will compound its historic Title IX wrongs at the end of 2021, when it terminates the 38-member women's varsity swimming and diving team, and with it, MSU terminates all opportunities for women to compete in intercollegiate varsity swimming and diving at the university.

3.      The Administration of MSU, including its President, Athletic Director, and Board of Trustees have all steadfastly insisted that their decision to eliminate the team was final and irreversible.

4.      Plaintiffs seek to stop Defendants from discriminating against them and all others similarly situated now and in the future. They seek injunctive relief to prevent Defendants from eliminating the women's swimming and diving programs at the end of the 2020–2021 academic year and to require Defendants to add women's varsity athletic opportunities until Defendants offer equal opportunity to participate in varsity athletics free from discrimination.

5.      Defendants' intentional decisions to offer significantly fewer opportunities for female athletes, eliminate women's sports despite existing non-compliance with Title IX, and provide unequal access to facilities and monies for women's sports is based upon gender and is, therefore, intentional discrimination.

## JURISDICTION AND VENUE

6.      This action arises under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.*, and the regulations and policies promulgated pursuant to that law, as well as under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, as enforced through 42 U.S.C. § 1983.

7.      This Court has jurisdiction over Plaintiffs' federal law claims pursuant to 28 U.S.C. §§ 1331, 1343(3), and 1343(4); this Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

8.     Declaratory and other relief is authorized pursuant to 28 U.S.C. §§ 2201 and 2202 to obtain the correct interpretation of the legal requirements described in this Complaint, which are necessary and appropriate to determine the respective rights and duties of the parties to this action.

9.     Venue is proper in the United States District Court for the Western District of Michigan pursuant to 28 U.S.C. § 1391(b) because the events from which Plaintiffs' claims arise occurred in East Lansing, Michigan, which is within the jurisdiction of this Court.

## THE PARTIES

10.     Every spot on the women's swimming and diving team represents a lifetime of dreams and the sacrifice it took to make those dreams a reality, including overcoming life-changing personal, family, economic, and physical challenges both in and out of the pool. It should be noted that the Plaintiffs here are not in this alone. While not parties to this lawsuit, the Plaintiffs' families and coaches are grieving with them. The parents, who have done their best over many years to encourage their daughters' dreams and to support them through their struggles, suffer as only parents can when those dreams are shattered. The coaches, who worked with, supported, and mentored the student athletes on a daily basis are now watching much of that work go to waste.

5

11.    The women's swimming and diving team at MSU consisted of dedicated Head Coach Matt Gianiodis, Assistant Head Coach Kathleen Milloy, Assistant Coach and Diving Coach Eric Best, Assistant Coach Quentin Bishop, Student Assistant Coach Robbie Dickson, and a group of student athletes who had developed themselves into community and academic leaders.

### *Plaintiff Sophia Balow*

12.    Plaintiff Sophia Balow is 19 years old and a sophomore majoring in Business. She has been accepted into MSU's highly competitive Business School.

13.    Plaintiff Balow grew up in Plymouth, Michigan. Plaintiff Balow wanted to swim in college. As a result, she gave up a very prestigious education at some schools on the East Coast in order to be able to attend and swim at MSU.

14.    Plaintiff Balow has been swimming since she was seven years old. She became very competitive in swimming her sophomore year of high school and has continuously improved. As a freshman she had the fastest mile (1,650-yard freestyle race) time on the team and was consistently improving her times in other events. Plaintiff Balow has not yet reached her potential in swimming and, unfortunately, she now may never know how well she could have done because the program has been cut.

15.     Transferring to a new institution carries with it a number of risks. Transferring can result in the athlete losing course credits and having to complete an additional semester or two at their own cost and expense at a new university. Further, as a result of the National Collegiate Athletic Association ("NCAA") rules, a student only has five calendar years to complete their four years of athletic eligibility. Students who transfer are not automatically eligible to compete the year following a transfer and, as such, a student athlete can miss valuable playing time from their five calendar years that they will never be able to recover. These risks, which are generally applicable to all of the Plaintiffs, are hereafter referred to as the "Transfer Risks."

16.     Transferring is not a viable option for Plaintiff Balow. First, there are very few Division I swimming and diving spots available around the country. Plaintiff Balow would also suffer further harm by transferring to another school based on her acceptance into MSU's highly competitive Business School, which means she would have to reapply to another Business School and risk not being accepted. Additionally, she would suffer the loss of course credits, which would likely result in her having to spend at least an additional semester or two at her own cost and expense at a new university.

### *Plaintiff Ava Boutrous*

17.    Plaintiff Ava Boutrous is 20 years old, a junior, and majoring in chemistry at MSU. Plaintiff intends to pursue a post-graduate degree in either medicine or pharmacy.

18.    Plaintiff Boutrous is from Grosse Pointe Farms, Michigan. She comes from a swimming family. Plaintiff Boutrous's father was a Division I swimmer, and since she was a little girl, Plaintiff Boutrous wanted to follow in her father's footsteps. In order to meet those goals, Plaintiff Boutrous chose to sacrifice many of the normal experiences that high school kids have so that she could focus on swimming and become a Division I swimmer.

19.    Plaintiff Boutrous chose MSU for her collegiate swimming career because of the team chemistry and the coaching. There was a connection amongst the team and the coaches that she did not see at any of the other schools that she visited.

20.    Plaintiff Boutrous is too far along in her academics to transfer to another institution without suffering the Transfer Risks, including the biggest risk of not being able to graduate in four years. This would cause unnecessary delay and expense in her education.

21.    Additionally, because Plaintiff Boutrous's swimming career will be over, she will lose that special connection she had with her father. Swimming was

always something they could talk about and were able to connect with when so often

fathers and daughters are not able to find common ground. This bond will be stripped

from her and she never would have attended MSU if she had known Defendants

would cut the swimming and diving team.

### *Plaintiff Julia Coffman*

22.     Plaintiff Julia Coffman is originally from Ann Arbor, Michigan. She is

18 years old and is a freshman at MSU on the swimming and diving team.

23.     Plaintiff Coffman intends to apply to the Business School at the end of

her freshman year to potentially pursue a career in business.

24.     Plaintiff Coffman started swimming when she was four or five years

old. She has always known that she wanted to swim competitively in college.

25.      Plaintiff Coffman was recruited at other schools around the country and

was offered scholarships to attend some of those institutions. However, she turned

them down to attend MSU.

26.     Part of the reason she chose MSU was because of the location. She liked

that she would not have to get on a plane to go home to see her family, which would

have been the case at some of the other schools she was considering. However, a

bigger part of the reason she chose MSU was because she knew approximately 10

other student athletes who were already on the swim team or would be joining the

team with her as freshmen. Knowing these individuals provided her with a

foundation of having a great team that she was familiar with. More importantly, it provided her with a support network in helping her with that often tough transition from high school to college. She anticipated these same connections, and new ones she would develop with others on the team, would play a significant role in establishing her professional network after she graduated from college.

27.    If she had known that MSU was going to cut the program, she would have chosen to go to a different school.

28.    Plaintiff Coffman is considering her transfer options, but she is hesitant because she will not be able to attend a school that has the same support network and is so close to home. However, Plaintiff Coffman is not ready to give up swimming yet and will be irreparably harmed if the program is cut.

### *Plaintiff Kylie Goit*

29.    Plaintiff Kylie Goit is 18 years old and a freshman on the swimming and diving team. She has indicated her intention to be part of the Business School and will be applying when the application process is opened.

30.    Plaintiff Goit is from Canton, Michigan. Plaintiff's Goit's older sister is a junior and also a member of the MSU swimming and diving team. Plaintiff Goit's older sister is part of the reason Plaintiff Goit chose to come to MSU. Plaintiff Goit watched her older sister swim at another school, before transferring to MSU, and saw her struggles and how hard it was to fit in. When she saw the team at MSU, Plaintiff

Goit knew it would be a great fit for her and so she chose to go to MSU. She accepted a 10% scholarship with the understanding that if she worked hard and proved herself, she could earn more scholarship money each year. Now, she will never have a chance to earn more scholarship money.

31.     In high school, Plaintiff Goit was All-State, having placed in the Top 8, and she was part of two relays that were named All-American. She had full ride offers in Florida and New York to attend college for free on scholarship, but instead chose to attend MSU and take only a 10% scholarship.

32.     If Plaintiff Goit knew that MSU was going to cut the program, she never would have attended MSU and would have chosen one of the other colleges that were recruiting her. Transferring now is extremely challenging because her swim times are over a year old as she has not been able to compete this season due to COVID-19. Additionally, transferring is extremely complicated because there is no guarantee that any other school will have a scholarship or even a spot available for her to be on the team. She also watched her older sister join a program that was not a good fit for her. She only has one opportunity to transfer. She knew she loved the atmosphere, environment, coaches, and teammates at MSU. Finding all of those things in the next school, including scholarship money, is next to impossible.

33.     Plaintiff Goit unfortunately has already started losing some of the benefits of being a student athlete on campus in terms of medical care. Plaintiff Goit

was really struggling with the isolation of the pandemic, and then she was told that her team was being cut. She sought help from the athletic department, which is supposed to be providing mental health services. She was told that they only had limited spots available and that they were going to "save" the appointments, which she interpreted as meaning they were being saved for athletes that still had a team.

34.     Plaintiff Goit had the rare benefit of being able to say that she was a Division I college athlete with her sister on the very same team. Plaintiff had been swimming with her sister her entire life. Their parents had the ability to watch both their daughters swim for the same school in the same meet that was just over an hour's drive. If Plaintiff Goit wants to swim again, which she does, she will need to transfer to another school. Whether there are any spots available for her, is a separate question; the answer unknown at this particular time. However, the most severe irreparable harm is that her sister, as a junior, cannot feasibly transfer, which means they will not swim together competitively again.

### *Plaintiff Emma Inch*

35.     Plaintiff Emma Inch is 19 years old and a sophomore at MSU majoring in marketing. She is originally from Farmington, Michigan.

36.     Plaintiff Inch has been swimming since she was six years old with her twin sister. During high school, it became clear that Plaintiff Inch was a great swimmer while her twin sister was a great runner. Both sisters were recruited by

MSU to play their respective sports. Initially, Plaintiff Inch did not want to attend the same college as her sister, but after giving it more thought, she decided that attending the same university was an important factor in the decision to come to MSU. Additionally, MSU also had more meaning for Plaintiff Inch as a swimmer because her uncle was a former captain of MSU's men's swimming and diving team.

37.    Plaintiff Inch had a very successful high school swimming career as she All-State (top 8) for her sophomore, junior and senior years, and was a part of relay teams that broke state records. Her success in the pool continued at MSU, where she made the finals as a freshman in the Big Ten conference meet and scored points for the team. Plaintiff Inch was part of an upward trend in the program and helped contribute to the team scoring more points in the conference meet than they had in many years.

38.    Plaintiff Inch is actively involved in several committees and has many leadership roles because she is on the swim team. She is the swim and dive team's representative on the Diversity and Leadership Committee and a team representative for the Student-Athlete Advisory Committee ("SAAC"). Plaintiff Inch had intended and hoped to become the President of SAAC, but now will be unable to because she will no longer be a student athlete. These committees provide amazing opportunities for student athletes to network and meet community members who can offer them career advice and provide them with job opportunities they would not otherwise

have. Plaintiff Inch is being irreparably harmed by having these opportunities taken away from her with the cutting of swimming and diving.

39.     Plaintiff Inch is not ready to give up swimming and will likely be forced to transfer if the program is not saved. Plaintiff Inch does not want to transfer as she is a recognized leader already at MSU and will not have that same status if she must start over at another university. Transferring would also require giving up the opportunity to attend college with her twin sister, who has no reason transfer as her sport has not been cut.

### Plaintiff Sheridan Phalen

40.     Plaintiff Sheridan Phalen is 18 years old, a freshman, and is majoring in nutrition and biology. She also has interest in becoming a teacher so that she can teach nutrition and biology.

41.     Plaintiff Phalen is from Alexandria, Virginia. She started swimming competitively at the age of five. She wanted to come to MSU because she decided from an early age she wanted to live in a colder climate. She wants to live permanently in Michigan.

42.     Plaintiff Phalen is painfully shy. Being part of the swim team has been good for her because she has been able to make some friends on the swim team, despite attending school during the global pandemic when very few, if any, of her classes are in person. Plaintiff Phalen fears that without swimming and having

practice to go to, she will not make the necessary connections to help her professionally or emotionally. She will be irreparably harmed without swimming because she struggles meeting people and forming relationships. Some of her teammates and friends will be transferring. Her ability to meet people and form relationships has been limited by the global pandemic and will become absent entirely if swimming and diving is cut permanently.

### *Plaintiff Madeline Reilly*

43.     Plaintiff Madeline Reilly is a junior and is 20 years old. She is originally from Greer, South Carolina. Plaintiff Reilly is majoring in kinesiology and plans to attend medical school after her graduation from MSU.

44.     Plaintiff Reilly has been swimming as long as she can remember. Both of her parents swam in college. At the age of 12, she began focusing primarily on swimming and putting all of her efforts into that sport. It helped her to develop confidence and taught her how to set and obtain goals.

45.     Plaintiff Reilly was on track to becoming a four-year varsity letter earner. This is all being stripped from her now that MSU is attempting to cut the swimming and diving team.

46.     As part of her role as a student athlete on the swimming and diving team, Plaintiff Reilly got to volunteer with pediatrics patients at Sparrow Hospital as part of a program connecting student athletes to volunteer opportunities at the

hospital. Volunteering with sick children is what inspired her to want to go to medical school. She was planning on leading this program next year, but since she will not be a student athlete, this is likely not going to occur. Plaintiff Reilly is also involved in SAAC. She will also lose this role and her leadership roles as a committee member.

47.     Plaintiff Reilly will not transfer as a junior. Many of her credits would likely not transfer to another institution. Therefore, transferring would delay her post-secondary graduation, as well the start of her medical career.

### Plaintiff Olivia Starzomski

48.     Plaintiff Olivia Starzomski is 18 years old, a freshman, and is from Sault Ste. Marie, Ontario, Canada. She is majoring in criminal justice.

49.     Plaintiff Starzomski was recruited from Canada to join the MSU swim and dive team. Plaintiff Starzomski has been swimming competitively since she was five years old. In high school, she and her mother moved to Toronto, away from her father and brother, so that she could train at the Ontario Swim Academy. She sacrificed her family so that she could train in the best facilities that Canada had to offer.

50.     Plaintiff Starzomski is a two-time Canadian National Champion in the 200 Breaststroke and four-time Provincial Champion in the 200 Breaststroke. She set the Provincial record for the 100 Breaststroke and was an Olympic Trial Qualifier.

51.     Given her success, Plaintiff Starzomski had many opportunities to swim in college and was heavily recruited. She knew she wanted to come to the United States to swim and looked at many schools within the Big 10 where she was offered substantial scholarships. MSU also recruited her and offered her a 90% scholarship. After vising the campus, she fell in love with MSU and knew she wanted to complete her college career at MSU.

52.     Plaintiff Starzomski's swimming goals do not stop with four years of college. She intends to swim beyond college and hopefully attend the Canadian Olympic Trials to make the Canadian National Team, which is a realistic goal for her considering her success. However, MSU's decision to cut swimming and diving is depriving her of the ability to meet this goal. She cannot get better and make the Olympic team if she does not have the competition.

53.     Plaintiff Starzomski is understandably concerned about transferring. Not only is the process stressful, but she only gets one chance to transfer. If this new school is not a good fit for her, she has no other options and will be stuck there. She will also be irreparably harmed because she will not get the same level of scholarship if she is forced to transfer. One school she has already spoken with has indicated that they have no scholarship money available for the 2021–2022 school year.

*Plaintiff Sarah Zofchak*

54.    Plaintiff Sarah Zofchak is a junior and is 20 years old.

55.    Plaintiff Zofchak was born and raised in Ann Arbor, Michigan. Despite living in Ann Arbor, she has always been an MSU fan. She is especially partial to MSU because her older brother swam on the men's swimming and diving team.

56.    Plaintiff Zofchak started swimming competitively when she was 6 or 7 years old. She always believed she would be a college swimmer and was not going to accept anything less. MSU provided the right level of competition for her and provided her a great team dynamic and coaches.

57.    Plaintiff Zofchak is a member of the Spartan Buddies and volunteers at Sparrow Hospital. These types of organizations, as well as having a network of teammates and all the alumni that came before her on the swimming and diving team, have been absolutely imperative to Plaintiff Zofchak's growth, both in and out of the pool.

58.    Plaintiff Zofchak does not know if she will have access to the same network if she were to transfer to another school. For instance, the alumni event hosted by the swimming and diving team is one of the longest running of such events in the country. Now that there is no team, Plaintiff Zofchak will lose those networking opportunities, as well as the chance to form those emotional connections

with new athletes that come after her. If the team is cut, she will not have the opportunity to share the wisdom of what she learned with those who would have otherwise joined the swimming in the future.

### Plaintiff Taylor Arnold

59.    Plaintiff Taylor Arnold is 21 years old and a senior at MSU majoring in Special Education and minoring in Teaching English to Speakers of Other Languages.

60.    Plaintiff Arnold resides in Hudsonville, Michigan. Growing up, her family always supported MSU, and she was raised as a fan of the Spartan culture. Plaintiff Arnold's older sister attended MSU, which helped solidify her decision to attend MSU even more after visiting campus and learning about the team.

61.    Being a member of the swimming and diving team, Plaintiff Arnold was afforded opportunities that are impossible to replace. She had a swimming "family" that she could rely upon for help on everything from personal issues to selecting her classes. She understands now that women coming after her will not have the same opportunities that she did in being a student athlete. This is especially true in the area of perseverance and adversity. Being a member of the swimming and diving team taught her that even when you do not get the best results, you keep trying and working hard. Through this process she developed stronger friendships.

19

62.     In the future, being an alumni of MSU will not have the same weight or recognition to future employers when the swimming and diving team no longer exists. It also does not have the same prestige for being in the Big 10 and a Power 5 conference when the school no longer wishes to support the sport.

63.     The women's swimming and diving team has had the highest GPA for the past two out of three years. Defendant Beekman has made public statements that the team was not good enough for MSU athletics, which was not only insulting, it is false. The loss of the team is irreparable and hurts Plaintiff Arnold's future job prospects. Plaintiff Arnold and her teammates are now left with no community when returning to campus, no alumni meets, and they are losing meaningful connections with other MSU alumni.

### *Plaintiff Elise Turke*

64.     Plaintiff Elise Turke is 22 years old and a senior at MSU. She is majoring in neuroscience and minoring in Spanish and is originally from Grand Rapids, Michigan.

65.     While she is a senior on the team, she has been irreparably harmed by the cutting of the swimming and diving team. Being part of the team is a big part of her identity as a student athlete.

66.     When the cutting of the swimming and diving team was announced, Defendant Beekman made it personal to the swimming and diving team by claiming

that, because the swimming and diving team was not successful enough, the team had to be cut. This is despite the fact that the women's swimming and diving team had the highest GPA of any MSU team and was on an upward trend in their competitions.

67.     Plaintiff Turke has applied and been accepted to medical school. In her interviews and essays, she focused her responses on what she had learned from being a student athlete at MSU. There are countless women out there who will never have this same chance to experience what it is like to be a Division I swimmer and diver at MSU, and they will be forever harmed irreparably.

### *Defendant Michigan State University*

68.     Defendant MSU is a principal campus of the Michigan State University, which is an Educational Corporation formed under existing state law in the State of Michigan. MSU's campus and principal place of business is located in East Lansing, Michigan, which is within this Court's jurisdiction.

69.     Defendant MSU is a recipient of federal funds and is required to comply with Title IX and all implementing regulations.

70.     Defendant MSU holds itself out as a university committed to providing top-quality intercollegiate sports programs. The university uses this distinction as part of its efforts to recruit top student athletes and coaching staff. Under Title IX of

the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, and the regulations adopted pursuant to 34 C.F.R. Part 106 (collectively "Title IX"), Defendant MSU must provide equality of opportunity for women and men in every program it offers, including equal opportunities for male and female athletes in intercollegiate sports programs.

### *Defendant Bill Beekman*

71.     Defendant Bill Beekman is and has been the Director of Athletics of MSU since 2018. Defendant Beekman is an employee and agent of Defendant MSU who reported directly to and was under the direct supervision and control of Defendant Samuel Stanley at all times relevant to this Complaint.

72.     In his role, Defendant Beekman is responsible for ensuring all policies and practices at MSU comply with Title IX.

73.     Defendant Beekman is aware of requirements under Title IX, which prohibit discrimination on the basis of sex.

74.     Defendant Beekman is aware of his duty to ensure students are treated equally regardless of gender.

75.     Defendant Beekman is aware that MSU's varsity athletic team members are segregated by gender within each sport.

***Defendant Samuel L. Stanley, Jr.***

76.    Defendant Samuel Stanley, Jr. is and has been the President of Defendant MSU since 2019. Defendant Stanley is the highest-ranking employee of Defendant MSU and provided final administrative approval of all decisions by Defendant Beekman regarding cutting athletic programs.

77.    As President of MSU, Defendant Stanley is aware of requirements under Title IX, which prohibits discrimination on the basis of sex.

78.    As President of MSU, Defendant Stanley is also aware of his duty to ensure students are treated equally regardless of gender.

***Defendant Board of Trustees***

79.    Defendant Board of Trustees is the governor board over Defendant MSU.

80.    Defendant Michigan State University Board of Trustees ("Michigan State Board of Trustees") is an eight-member board responsible for making rules and regulations to govern Michigan State.  The election of these Trustees is prescribed by Article XIII, Section 5 of the Michigan State Constitution and Michigan Election Law section 168.286.

81.     Defendant Board of Trustees has control and direction over all expenditures of the University's funds, including federal financial assistance pursuant to M.C.L. § 390.553.

### Dianne Byrum

82.     Dianne Byrum was at all relevant times the Chair of the Board of the governing Board of Trustees of Defendant MSU, the governing body which provided the authorization and final approval of the illegal elimination of the women's swimming and diving program.

## ALLEGATIONS AS TO THE PLAINTIFFS CLASS

83.     The named Plaintiffs bring this action on behalf of themselves and on behalf of a class of all those similarly situated both now and in the future pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2).

84.     The Plaintiffs seek to represent a class of all present, prospective, and future female students at MSU who are harmed by and want to end MSU's sex discrimination in: (1) the allocation of athletic participation opportunities; (2) the allocation of athletic financial assistance; and (3) the allocation of benefits provided to varsity athletics. The Plaintiffs seek to represent a class of all present, prospective, and future female students at MSU who want to participate in the recently eliminated varsity sport of women's swimming and diving or who want to participate in other

varsity sports not offered to women by MSU. They also seek to represent those female student athletes who are deterred from enrolling at MSU because it does not offer women the sport they wish to play.

85.    Each of the named Plaintiffs is a member of the proposed class and has been or will be injured by MSU's sex discrimination in its varsity athletic program. MSU's announced elimination of the women's varsity swimming and diving program will exacerbate the discrimination by eliminating female athletic participation opportunities at MSU.

86.    The Plaintiffs seek to represent the proposed class because joinder of all class members and all persons harmed by the ongoing sex discrimination in Defendants' varsity athletic program is not only impracticable, but impossible.

87.    The proposed class is known to exist, but the identity of its members is and will continue to change without specific names during this litigation because of the nature of college enrollment and athletic participation. Students at MSU generally aim to graduate four years after they matriculate. Athletes are eligible for only four years, according to the rules of the NCAA. Accordingly, the members of the class harmed by MSU's discriminatory actions constantly change as each class of students graduate and as another class of students enrolls at MSU.

88.    Not all members of the plaintiff class are currently identifiable because the class includes prospective and future students who will enroll at MSU during this litigation or who will be deterred from enrolling at MSU because of Defendants' failure to provide athletic participation opportunities for female student athletes, including the sports in which they want to participate.

89.    Not all members of the plaintiff class are currently identifiable because the class includes not only swimmers and divers, but also all present, prospective, and future female students who want to participate in other varsity intercollegiate sports that are not offered at MSU.

90.    It is unknown how many present, prospective, or future female student athletes would enroll at MSU or would participate in athletics at the university if it stopped discriminating against women. Also unknown are the hundreds of additional student athletes who might apply, who might be recruited, and who might participate in athletics at MSU if, for example, it added the approximately 42 athletic opportunities necessary to reach proportional equality of opportunity for women participating in intercollegiate sports at MSU before the announced elimination of the women's swimming and diving program was made.

91.    Joinder is impracticable because the class includes members whose identities are not currently known. On information and belief, there are present

female students at MSU whose names are currently unknown but who would participate in varsity athletics if MSU did not intentionally discriminate in the operation of its athletic program or offered the sports or events in which the female students want to participate.

92.     Joinder is impracticable because the class includes unknown and unidentifiable prospective and future students who will enroll at MSU during the course of this litigation or who will be deterred from enrolling at MSU because of the sex discrimination in Defendants' varsity athletic program.

93.     Joinder is also impracticable because of the inherently fluid nature of the proposed class. Even though the proposed class is known to exist, the identities of its members will change during the course of this litigation due to the nature of college enrollment and athletic participation. Accordingly, the membership of the class harmed by Defendants' intentional sex discrimination constantly changes as students graduate from MSU and as new classes/groups of graduating high school students enroll as freshmen at MSU.

94.     The Plaintiffs satisfy the "commonality" requirement of Federal Rule of Civil Procedure 23(a)(2) because they share questions of law and fact in common with the proposed class, particularly whether MSU is violating Title IX by failing to provide female student athletes with an equal opportunity to participate in varsity

intercollegiate athletics. Because Title IX requires comparison of the sex-segregated men's and women's athletic opportunities as a whole, the Title IX issues in this action are inherently class based.

95.     The Plaintiffs satisfy the "typicality" requirement of Federal Rule of Civil Procedure 23(a)(3) because their claims are typical of those of the proposed class. They all have been denied, are continuing to be denied, or will be denied an opportunity to participate in varsity intercollegiate athletics at MSU because of its ongoing sex discrimination. All of them want the Court to restrain MSU from continuing its elimination of any women's varsity sports opportunities and to require it to restore and reinstate swimming and diving and add more women's varsity sports, as well as comply with all aspects of Title IX.

96.     The Plaintiffs are members of the proposed class and will fairly and adequately represent the interests of the class pursuant to Federal Rule of Civil Procedure 23(a)(4). They intend to prosecute this action vigorously in order to secure fair and adequate injunctive relief for the entire class.

97.     The Plaintiffs satisfy the requirement that class certification would be superior to other methods available for the fair and efficient adjudication of the controversy required by Federal Rule of Civil Procedure 23(b)(2) because MSU has acted or refused to act on grounds generally applicable to the class—denying female

student athletes an opportunity to participate in varsity intercollegiate athletics, including but not limited to, women's varsity swimming and diving, thereby making final declaratory and injunctive relief appropriate with respect to the class as a whole.

98.     Undersigned counsel has devoted substantial and sufficient efforts to identify and investigate potential claims in this action, to developing knowledge of the applicable law, and has sufficient resources to commit to representing this putative class as interim counsel under Federal Rule of Civil Procedure 23(g)(3) until such time as this Court determines whether to certify the action as a class action.

## GENERAL ALLEGATIONS

### *The Department of Education Interpretations of Title IX Compliance*

99.     Title IX requires in relevant part at 20 U.S.C. § 1681(a):

> No person in the United States shall, on the basis of sex,
> be excluded from participation in, be denied the benefits
> of, or be subjected to discrimination under any education
> program or activity receiving Federal financial assistance.

100.   Women's swimming and diving at MSU qualifies as a program or activity.

101.   MSU receives federal financial assistance as a public institution, even if the women's swimming and diving program specifically did not receive federal funding.

102.  Defendant Board of Trustees has control and direction over all expenditures of the University's funds, including federal financial assistance pursuant to M.C.L. § 390.553, and specific persons, as detailed above, had actual knowledge of the discriminatory acts at issue in this matter.

103.  The Civil Rights Restoration Act of 1987 made plain Congress's intent that "program or activity," as used in Title IX, applies to any program or activity offered by an educational institution that receives federal financial assistance— whether or not the program itself receives such assistance. 20 U.S.C. § 1687. Because MSU receives federal financial assistance, its athletic program is subject to Title IX and MSU must comply with its requirements.

104.  In the statute, Congress expressly delegated authority to the United States Department of Health, Education and Welfare ("HEW") to promulgate regulations interpreting Title IX. 20 U.S.C. §1682. In 1975, HEW promulgated these regulations at 45 C.F.R. Part 86. The United States Department of Education ("DOE") later adopted these regulations and codified them at 34 C.F.R. Part 106 (collectively, the "Regulations"). These regulations are enforced by the Office for Civil Rights ("OCR") within the DOE.

105.  The Regulations require that federal funding recipients such as MSU undertake remedial and affirmative efforts to eliminate sex discrimination. 34 C.F.R. § 106.3(a) & (b). They further direct schools to evaluate their own policies and

actions; to modify any policies and actions that are discriminatory; and to take remedial steps to eliminate the effects of discriminatory actions. 34 C.F.R. § 106.3(c). These mandates apply whether or not anyone has complained about discrimination.

106.   Defendant has not undertaken sufficient remedial or affirmative action to remedy the historical and ongoing sex discrimination in its athletic program.

107.   The Regulations require that recipients such as MSU adopt nondiscrimination policies and grievance procedures; appoint and train a Title IX officer to receive and investigate sex discrimination complaints; and disseminate this information to all students, faculty, and employees. 34 C.F.R. §§ 106.8 & 106.9.

108.   The Regulations further require that recipients confirm and promise compliance by filing an Assurance of Compliance with the DOE each time they apply for or receive federal financial assistance. 34 C.F.R. § 106.4. The Assurance is a condition precedent to the receipt of federal funds. In the Assurance, schools must assure the DOE that they comply with Title IX and that they will continue to do so. The Assurance also commits applicants/recipients "to take whatever remedial action is necessary in accordance with § 106.3(a) to eliminate existing discrimination on the basis of sex or to eliminate the effects of past discrimination." 34 C.F.R. § 106.4.

109.   MSU has completed and submitted many Assurance of Compliance forms to the DOE and has received federal funds from the DOE even though MSU's athletic program has never complied with Title IX.

110.   The Regulations include specific prohibitions that state:

> in providing any aid, benefit, or service to a student, a recipient shall not, on the basis of sex

> (1) Treat one person differently from another in determining whether such person satisfies any requirement or condition for the provision of such aid, benefit, or service;

> (2) Provide different aid, benefits, or services or provide aid, benefits, or services in a different manner;

> (3) Deny any person any such benefit or service;

> …

> (6) Aid or perpetuate discrimination against any person by providing significant assistance to any agency, organization, or person which discriminates on the basis of sex in providing any aid, benefit, or service to students or employees.

111.   The Regulations also prohibit sex discrimination in the recruitment of students. Schools may be required to undertake additional recruitment efforts for one sex as remedial action pursuant to § 106.3(a) and may choose to undertake such efforts as affirmative action pursuant to § 106.3(b).

112.   Upon information and belief, MSU has not undertaken sufficient remedial or affirmative recruiting efforts to ensure that it offers female students an

equal opportunity to participate in varsity athletics; nor has it provided its women's teams with the resources necessary to adequately recruit female athletes with NCAA Division I athletic skills.

113.   In 1979, the OCR issued a policy interpretation of Title IX and the Regulations as applied to intercollegiate athletics at 44 Fed. Reg. at 71418 (the "Policy Interpretation"). The Regulations prohibit sex discrimination in the allocation of athletic scholarships. In particular, 34 C.F.R. § 106.37(c) provides:

> To the extent that a recipient awards athletic scholarships or grants-in-aid, it must provide reasonable opportunities for such awards for members of each sex in proportion to the number of students of each sex participating in interscholastic or intercollegiate athletics.

114.   Regulation 34 C.F.R § 106.41(a) requires that recipients provide athletic equity at each separate level of competition. In particular, it states:

> No person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, be treated differently from another person or otherwise be discriminated against in any interscholastic, intercollegiate, club or intramural athletics offered by a recipient, and the recipient shall provide any such athletics separately on such basis.

115.   The Regulations identify ten (10) non-exclusive areas in which recipients must provide equal athletic opportunity. These include:

> 1. Whether the selection of sports and levels of competition effectively accommodate the interests and abilities of members of both sexes;

> 2. The provision of equipment and supplies;
> 3. Scheduling of games and practice time;
> 4. Travel and per diem allowance;
> 5. Opportunity to receive coaching and academic tutoring;
> 6. Assignment and compensation of coaches and tutors;
> 7. Provision of locker rooms, practice and competitive facilities;
> 8. Provision of medical and training services;
> 9. Provision of housing and dining facilities and services; and
> 10. Publicity.

34 C.F.R. § 106.41(c).  A school's "failure to provide necessary funds for teams for one sex" also may be indicative of sex discrimination. *Id.*

116.   The OCR Policy Interpretation sets forth three areas of compliance under Title IX: (1) effective accommodation of student interests and abilities; (2) equal athletic financial assistance; and (3) equal treatment and benefits for athletic teams.

117.   MSU fails all three areas of compliance. This lawsuit seeks to remedy MSU's intentional sex discrimination regarding: (1) the allocation of athletic participation opportunities; (2) the allocation of athletic financial assistance; and (3) the allocation of benefits provided to varsity athletic teams.

118.   The OCR Policy Interpretation provides three ways—commonly referred to as prongs one, two, and three—for a university to comply with the requirement to provide effective accommodation of students' interests and abilities:

(1) Whether intercollegiate level participation opportunities for male and female students are provided in numbers substantially proportionate to their respective enrollments; or

(2) Where the members of one sex have been and are underrepresented among intercollegiate athletes, whether the institution can show a history and continuing practice of program expansion which is demonstrably responsive to the developing interest and abilities of the members of that sex; or

(3) Where the members of one sex are underrepresented among intercollegiate athletes, and the institution cannot show a continuing practice of program expansion such as that cited above, whether it can be demonstrated that the interests and abilities of the members of that sex have been fully and effectively accommodated by the present program.

119.   Compliance in the area of equal athletic benefits is assessed under the factors set forth in 34 C.F.R. 106.41(c) plus recruitment and support services. The specific requirements are detailed in the Policy Interpretation. *See* 44 Federal Register 71,413, 71,415–71,417 (1979).

120.   Compliance in the area of equal athletic financial assistance is assessed pursuant to 34 C.F.R. §106.37 and the Policy Interpretation. *See* 44 Fed. Reg. at 71,415. The OCR's application of these requirements is detailed in a "Dear Colleague" letter dated July 23, 1998, which incorporated the OCR's July 23, 1998 guidance to Bowling Green University.

121. Every federal court of appeals that has considered the OCR's regulations and policy guidelines, including the three-part test, has upheld them as valid and has given them deference in assessing Title IX compliance, including the Sixth Circuit. *See Mayerova v. E. Michigan Univ.*, 346 F. Supp. 3d 983, 989 (E.D. Mich. 2018), *appeal dismissed*, No. 18-2238, 2020 WL 1970535 (6th Cir. Apr. 20, 2020) *(*citing *Miami Univ. Wrestling Club v. Miami Univ.*, 302 F.3d 608, 615 (6th Cir. 2002) (according deference to 1979 Policy Interpretation); *see also Equity in Athletics v. Dep't of Educ.,* 504 F. Supp. 88, 102–05 (W.D. Va. 2007), *aff'd* 291 2008 WL 4104235 (4th Cir. 2008); *McCormick v. School Dist. Mamaroneck*, 370 F.3d 273, 288 (2d Cir. 2004); *Chalenor v. Univ. of N.D.*, 292 F.3d 1042, 1046-47 (8th Cir. 2002); *Miami Univ. Wrestling Club v. Miami Univ. of Ohio*, 302 F.3d 608, 615 (6th Cir. 2002); *Pederson v. La. State Univ*., 213 F.3d 858, 877–79 (5th Cir. 2000); *Neal v. Bd. of Trustees*, 198 F.3d 763, 770–72 (9th Cir. 1999); *Boulahanis v. Bd. of Regents,* 198 F.3d 633, 637–39 (7th Cir. 1999); *Horner v. Ky. High Sch. Athletic Ass'n*, 43 F.3d 265, 273, 274–75 (6th Cir. 1994); *Kelley v. Bd. of Trustees*, 35 F.3d 265, 270–72 (7th Cir. 1994); *Cohen v. Brown Univ.,* 991 F.2d 888, 895, 899 (1st Cir. 1993) ("*Cohen I*"); *Roberts v. Colo. State Bd. of Agric*., 998 F.2d 824, 828 (10th Cir. 1993); *Nat'l Wrestling Coaches Ass'n v. U.S. Dep't of Educ.*, 263 F. Supp. 2d 82,

94–96 (D.D.C. 2003), *aff'd* 366 F.3d 930 (D.C. Cir. 2004); *Favia v. Indiana Univ. of Pa.*, 812 F. Supp. 578, 584–85 (W.D. Pa. 1993), *aff'd* 7 F.3d 332 (3d Cir. 1993).

122.   The Regulations require that sponsors of intercollegiate athletics like MSU take such remedial actions as are necessary to overcome the effects of sex discrimination in violation of Title IX. *See* 24 C.F.R. § 106.3(a). On information and belief, MSU has not taken any recent remedial actions to satisfy its obligations under Title IX, nor has MSU ever provided females with an equal opportunity to participate in varsity athletics.

123.   The Regulations also require that sponsors of interscholastic athletics comply with the athletics regulations within three years of their effective date (which was July 21, 1975). On information and belief, MSU did not comply with the athletics regulations by 1978 and is still not in full compliance with Title IX today— 42 years later.

## FACTUAL ALLEGATIONS

124.   As of the beginning of the 2020–2021 academic and sports calendar, MSU sponsors men's and women's teams, including baseball, men's and women's basketball, men's and women's cross country, football, men's and women's golf, gymnastics, men's ice hockey, rowing, softball, men's and women's soccer, men's

and women's swimming and diving, men's and women's tennis, men's and women's track and field, volleyball, and wrestling.

125.   MSU is a member of the NCAA, a member of a Power Five conference (the Big Ten Conference), and participates in Division I, the highest level of intercollegiate competition.

126.   In choosing which sports it will offer to the students of each sex, MSU chooses how many varsity athletic participation opportunities it provides to male students and how many athletic participation opportunities it provides to female students. This fact makes athletics unlike other educational programs in which male and female students participate together or compete against each other for the same opportunities or class slots on an equal basis.

127.   As Athletic Director, Defendant Beekman is responsible for overseeing MSU's athletic program.

128.   MSU offers athletic financial assistance (i.e., athletic scholarships) to members of its varsity athletic teams.

129.   The Plaintiffs chose to attend MSU in order to participate on the swimming and diving team. They expected to participate on their team each of their years at MSU and planned their academic, personal, and financial lives accordingly. They would not have enrolled at MSU but for the opportunity to participate in

women's swimming and diving, and in many cases, the receipt of an athletic and/or academic scholarship.

130.   On October 22, 2020, MSU announced that it will no longer sponsor women's swimming and diving after the conclusion of the 2020–2021 academic year.

131.   The swimming and diving team averages 35 athletes each year. The elimination of this program does not bring MSU into compliance with Title IX. MSU already discriminates against its female students by offering too few athletic opportunities and providing less meaningful opportunities to women by padding some of their team rosters. By eliminating women's swimming and diving, MSU will make this discrimination worse—despite also eliminating some men's opportunities.

132.   Specifically, MSU is providing less meaningful opportunities to women by padding rowing, women's cross country, and women's track and field rosters.

133.   MSU exploited the average squad size for women's rowing and women's track by requiring those teams to carry more women on a team than is appropriate and necessary. Specifically, the NCAA Division I average rowing squad in 2018–2019 was 62.8. MSU carried a rowing squad of 89.

134.   The Division I average of all the track teams combined (cross country, indoor track and field, and outdoor track and field) was 96.9 in 2018–2019. MSU carried 173 on their track squads that same year. Furthermore, in that same year, approximately 66 of those 173 women never participated in a competition for their respective track or cross country team.

135.   Combined, that is 102 women above the average sizes of those teams among other Division I institutions.

136.   MSU promotes its athletic programs in order to recruit top athletes. Its website lauds the significant dollars that have been invested for the improvement of its athletic facilities: Michigan State University recently announced that it plans to revamp its facilities by including a brand-new indoor football facility, as well as renovating existing facilities. This recently unveiled plan will cost hundreds of millions of dollars. Some renovations and additions have already started despite MSU claiming it does not have sufficient funds to support women's swimming and diving.

137.   Upon information and belief, Defendant Beekman did not conduct appropriate research for alternative funding, redistribution of funding or assets, or any other options that would not require eliminating sports at MSU.

138.   Defendant Beekman, with the knowledge and consent of President Stanley and the Board of Trustees, and notwithstanding his knowledge of MSU's non-compliance and his responsibilities to the student athletes as Athletics Director of MSU, expressly supported the unlawful decision to terminate the women's swimming and diving team.

139.   On November 16, 2020, Plaintiff's counsel sent Defendants a letter regarding the elimination of the women's varsity swimming and diving program, explaining why the elimination of the program constitutes sex discrimination under Title IX, and requesting a dialog about the continuation of the women's swimming and diving team.

140.   Defendants responded by stating that they believed they were in compliance with participation requirements of Title IX pursuant to MSU's Equity in Athletics Disclosure Act ("EADA") data.

141.   Defendants did not address any other areas of Title IX compliance.

142.   Pursuant to the most recently available EADA data for the 2018–2019 academic year, MSU had a participation gap of 25 women to reach participation parity with their undergraduate enrollment gender breakdown.

143.   MSU had a participation gap of 25 women before it eliminated the swimming and diving team.

144.   This participation gap does not take into consideration MSU's roster padding for its women's rowing, women's cross country, women's indoor track and field, and women's outdoor track and field teams.

145.   "As a baseline, OCR will consider substantial proportionality achieved if the number of additional participants necessary required for exact proportionality would not be sufficient to sustain a viable team." *Biediger v. Quinnipiac Univ.*, 691 F.3d 85, 94 (2d Cir. 2012) (citing 1996 Clarification at 4).

146.   MSU's undenied participation gap of 25 women is more than sufficient to field a viable team and the true participation gap is significantly larger.

147.   MSU is also currently—and will be even more through the cutting of swimming and diving—depriving female athletes of equitable scholarships that it is providing to men.

148.   According to the 2018–2019 EADA data, MSU is depriving female student athletes in scholarships by $462,047.00.

149.   At all times, MSU is in control and responsible for providing equitable scholarships to its student athletes, regardless of how many scholarships the NCAA dictates may be provided for an individual sport. If one sport provides more scholarship opportunities by the NCAA, MSU has the responsibility to find equitable scholarship opportunities in other sports.

## INJUNCTIVE RELIEF

150.   Plaintiffs are entitled to injunctive relief under all their claims that restrains MSU from continuing to discriminate on the basis of sex, restrains MSU from eliminating the women's varsity swimming and diving program, and requires MSU to provide its female students participation opportunities in varsity intercollegiate athletics by sponsoring additional women's varsity athletic opportunities based upon the interests and abilities of MSU's present, prospective, and future students.

151.   Failure to grant the requested injunctive relief will cause irreparable harm to the Plaintiffs by continuing MSU's discrimination against them and MSU's present, prospective, and future female students, and by forever denying them an equal opportunity to participate in varsity intercollegiate athletics. If MSU is not restrained from eliminating women's varsity swimming and diving, Plaintiffs will never again have the opportunity to participate in this valuable educational experience at MSU—one that provides academic, physical, psychological, social, and even economic benefits for the rest of the participants' lives. There is no adequate remedy at law for this harm.

152.   The continuing, irreparable harm caused by MSU's discriminatory actions far outweighs any possible harm that granting the injunctive relief might

cause Defendants. Preliminarily enjoining Defendants' elimination of the varsity women's swimming and diving program in particular merely ensures retention of the status quo during the course of this litigation, because these athletes have limited (if any) opportunities to pursue their interests and abilities elsewhere. MSU will suffer no harm by reinstating the women's varsity swimming and diving program, other than the monetary cost of the program that it has already borne for many years.

153.  Defendants could choose to allocate its budget and athletic opportunities more equitably merely by shifting its longstanding favoritism toward men to a equitable allocation between men and women.

154.  Defendants will gain public relations and enrollment advantages by coming into compliance with Title IX and by offering more opportunities for female students.

155.  The injunctive relief that Plaintiffs request will promote the public interest in that it will increase educational opportunities for female students, will end sex discrimination at MSU, and will promote compliance with federal law. Congress decided that such nondiscrimination is in the public interest when it enacted Title IX. It has reaffirmed that public interest over the past 42 years by defeating each and every attempt that has been made to weaken Title IX. Equal opportunity for all

students—male and female—is at the core of this case, is at the core of American identity, and is clearly in the public interest.

## COUNT I
### Title IX
### (Unequal Allocation of Athletic Participation Opportunities)

156.   Plaintiffs re-allege and incorporate by reference all of the foregoing allegations.

157.   The Plaintiffs bring this claim as a class action as set forth in the Class Allegations.

158.   By offering certain opportunities to male students to participate in intercollegiate athletics, MSU has demonstrated its belief that athletic opportunities provide educational benefits that should be supported by the University. Plaintiffs agree that athletic opportunities provide valuable educational benefits. For this very reason, the Plaintiffs—and the class they represent—should have equal access and opportunity to receive the benefits that the male students at MSU receive from intercollegiate athletics. MSU historically has not provided and currently does not provide its female students with such equal access and opportunity.

159.   MSU determines the number of athletic participation opportunities that it will provide to male and female students by choosing which sports it will offer to each sex by deciding how many athletes it will allow to participate on each sports team.

160.   Defendants fail to provide female students an equal opportunity to participate in varsity intercollegiate athletics in violation of Title IX and 34 C.F.R. §106.41(c)(1).

161.   Defendants fail to comply with each prong of the three-part test described above. In particular:

> (1) The ratio of female to male athletes at MSU is not substantially proportionate to the overall ratio of female to male undergraduate students at Defendant.
>
> (2) MSU does not have a history or continuing practice of athletics program expansion for women.
>
> (3) MSU has failed to fully and effectively accommodate the athletic interests and abilities of its female students by, among other things, eliminating their opportunity to participate in varsity swimming and diving.

162.   According to information provided by Defendants to the federal government in its annual EADA reports, Defendants' female undergraduate enrollment rate is approximately 51.2% while its female athletic participation rate is only about 49.9%.

163.   Furthermore, on information and belief, for the 2020–2021 academic year, Defendants' female undergraduate enrollment rate is approximately 51.34% while its female athletic participation rate is only about 48.65%. Defendants do not provide female students with varsity athletic participation opportunities in a number substantially proportionate to female undergraduate enrollment.

164.   Defendants failed to meet the 1978 regulatory deadline for compliance with Title IX's requirement for equity in athletic participation opportunities. MSU has never met its compliance obligations and has not added any new female varsity sports since 1998. Defendants cannot show a history or continuing progress of program expansion for women. Instead, by eliminating women's varsity swimming and diving, the Defendants have gone backwards.

165.   Plaintiffs have the interest and ability to participate in women's varsity swimming and diving. High school students (the source of Defendants' incoming, prospective, and future students) also have the interest and ability to participate in swimming and diving as swimming is among the top ten most popular girls' high school sports. Competition exists in swimming and diving because it is a major NCAA sport and MSU has offered the sport for many years—as have other schools in the Big Ten.

166.   Defendants will exacerbate its existing pattern and practice of sex discrimination in its allocation of athletic participation opportunities if it is not restrained from eliminating female athletic participation opportunities in varsity swimming and diving.

167.   Plaintiffs seek a declaration that Defendants engaged in disparate treatment on the basis of sex by failing to offer female students an equal opportunity to participate in intercollegiate athletics.

168.   Plaintiffs seek expedited preliminary and permanent injunctive relief requiring Defendants to stop discriminating in the operation of its athletic department and ordering Defendant not to eliminate women's swimming and diving, or any women's varsity athletic team or opportunity.

169.   As a result of Defendants' discriminatory actions, the Plaintiffs have been denied and/or imminently will be denied their civil right to pursue an equal opportunity to participate in varsity intercollegiate athletics. They have been denied the educational, economic, physical, psychological, and social benefits of athletic participation. They have incurred or imminently will incur economic and compensatory damages associated with, among other things, lost opportunities, applying/transferring to other schools, moving to other schools, transferring/losing graduation credits, emotional distress, lost self-esteem, humiliation, and the denial of equal opportunity because of sex.

170.   If Defendants are not restrained from eliminating the women's varsity swimming and diving program, all of these female athletes may forever lose the opportunity to participate in intercollegiate sports—an opportunity that lasts only four years in a lifetime but has lifelong educational, economic, physical, psychological, and social benefits.

## COUNT II
### Title IX
### (Unequal Allocation of Athletic Financial Assistance)

171. Plaintiffs reallege and incorporate herein by this reference all of the foregoing paragraphs of this complaint.

172. The Plaintiffs bring this claim as a class action as set forth under the Class Allegations.

173. MSU provides athletic financial assistance to some of its varsity athletes.

174. Under Title IX, MSU must provide its female students with an equal allocation of any athletic financial assistance. Under 34 C.F.R. §106.37, an equal allocation means that MSU must provide its female athletes with athletic financial assistance in the same proportion that it allocates athletic participation opportunities to male athletes.

175. Defendants fail to provide female student athletes with an equal allocation of athletic financial assistance. This failure constitutes disparate treatment sex discrimination in violation of Title IX and 34 C.F.R. § 106.37.

176. MSU does not provide athletic financial assistance to its female athletes that is substantially proportional to its female athletic participation as required to comply with Title IX. As a result, it is not only more difficult to recruit athletes, but also to recruit athletes with sufficient skill to participate at the Division I level.

177.   Plaintiffs are harmed by Defendants' failure to provide its female students with an equal allocation of athletic financial assistance. Such harm includes lost educational opportunities, financial assistance, and lost quality in participation opportunities. Accordingly, they are entitled to the relief requested herein.

## COUNT III
### Title IX
### (Unequal Allocation of Athletic Treatment and Benefits)

178.   Plaintiffs reallege and incorporate herein by this reference all of the foregoing paragraphs of this complaint.

179.   The Plaintiffs bring this claim as a class action as set forth under the Class Allegations.

180.   MSU provides its varsity student athletes with certain benefits, including but not limited to, equipment, supplies, uniforms, locker rooms, scheduling for competitions, transportation and accommodations for travel, per diem for travel, coaching, tutoring and academic support services, practice and competition facilities, medical and training services, weight training and conditioning services, housing and dining services, sports information and publicity services, recruiting, video support, and other services.

181.   Under Title IX and 34 C.F.R. §106.41(c), MSU must allocate these benefits equally between male athletes and female athletes. On a program-wide basis,

it must provide female athletes with benefits that are comparable to those that it provides to male athletes.

182.   Defendants fail to provide female student athletes with an equal allocation of these benefits. This failure constitutes disparate treatment sex discrimination in violation of Title IX.

183.   MSU has not sufficiently allocated the amount of benefits (or the resources and budgets necessary to provide the benefits) it provides to female athletes.

184.   MSU has failed to increase or provide sufficient benefits (or the resources and budgets necessary to purchase the benefits) to its women's varsity athletic teams despite requiring that they carry significantly more athletes. Meanwhile, MSU has not decreased the benefits that it provides to men's varsity athletic teams even though they now carry significantly fewer athletes. As a result, while each male athlete now receives more or better benefits, each female athlete now receives fewer or worse benefits than in prior years.

185.   Defendant fails to provide equal athletic benefits in some or all of the categories set forth in the Regulations and the Policy Interpretation, including but not limited to:

> 1. The provision of equipment, uniforms, and supplies;
> 2. Scheduling of games and practice time;
> 3. Travel, transportation, and per diem allowance;

    4. Opportunity to receive coaching and academic tutoring;
    5. Assignment and compensation of coaches and tutors;
    6. Provision of locker rooms, practice and competitive facilities;
    7. Provision of medical and training services;
    8. Provision of housing and dining facilities and services;
    9. Publicity & sports information services;
    10. Administrative support;
    11. Recruiting resources and support; and
    12. Resources necessary to provide any of the foregoing benefits or to provide the female athletes with a genuine Division I athletic experience.

186.   Plaintiffs are harmed by Defendants' failure to provide its female student athletes with an equal allocation of benefits and resources. Such harm includes lost educational opportunities, lost competitive advantage, and less quality in participation opportunities. Accordingly, they are entitled to the relief requested herein.

## COUNT IV
## Elliott-Larsen Civil Rights Act (MCL)
## Gender Discrimination, Educational Section

187.   Plaintiffs re-allege and incorporate by reference all of the foregoing allegations.

188.   MSU is an educational institution within the meaning of MCL § 37.2401.

189.   Pursuant to MCL § 37.2402(a), an educational institution shall not "[d]iscriminate against an individual in the full utilization of or benefit from the

institution, or the services, activities, or programs provided by the institution because of . . . sex."

190.   Pursuant to MCL § 37.2402(b), an educational institution shall not "limit, or otherwise discriminate against an individual seeking admission as a student or an individual enrolled as a student in the terms, conditions, or privileges of the institution, because of . . . sex."

191.   Plaintiffs are a member of a protected class, in that they are female.

192.   At all times relevant herein, all agents and employees, including the individual defendants, were acting within the scope of their employment with MSU.

193.   One of the expected benefits of public school education, including the undergraduate education at MSU, is for students to be free from being subjected to discrimination based on their gender.

194.   Defendants are aware of the gender discrimination in their education activities and programs but have tolerated and condoned it, and unreasonably failed to take any prompt and appropriate remedial action.

195.   Defendants are aware of the gender discrimination in the terms, conditions, and privileges within their athletic program but have condoned it, perpetuated it, and unreasonably failed to take any effective remedial action.

196.   As a further direct and proximate result of Defendants' violation of the ELCRA, MCL 37.2101, *et seq.*, Plaintiffs have suffered a loss of benefits provided to

students, a loss of educational opportunities, and will so suffer in the future; they have been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court:

A.     Certify the first claim as a class action on behalf of all present, prospective, and future female students at MSU who seek to participate in varsity intercollegiate swimming and diving, or any other sport not currently offered by MSU;

B.     Enter an order declaring that Defendants have engaged in a past and continuing pattern and practice of discrimination against female students on the basis of sex in the operation of its athletic program, in violation of Title IX and the regulations promulgated thereunder;

C.     Issue preliminary and permanent injunctions from continuing to discriminate against female students on the basis of sex, restraining Defendants from eliminating the women's swimming and diving program (or any women's athletic opportunities), and requiring Defendant to provide females with an equal opportunity to participate in varsity intercollegiate athletics by sponsoring additional women's varsity athletic opportunities based upon the interests and abilities of Defendant's present, prospective, and future students;

D.     Maintain jurisdiction over this action to monitor Defendants' compliance with this Court's orders;

E.     Award the Student Plaintiffs compensatory damages that are incidental to the equitable relief at hand and permitted under the law;

F.     Award Plaintiffs their reasonable attorneys' fees and expenses; and

G.     Order such other and further relief as the Court deems appropriate.

Dated: January 15, 2021

Respectfully submitted,

NEWKIRK ZWAGERMAN, PLC

*/s/     Lori A. Bullock*
Jill Zwagerman, AT0000324
Lori Bullock AT0012240
Danya Keller AT0012300
NEWKIRK ZWAGERMAN
521 E. Locust Street, Suite 300
Des Moines, IA 50309
Telephone: 515-883-2000
Fax: 515-883-2004
Email: jzwagerman@newkirklaw.com
Email: lbullock@newkirklaw.com
Email: dkeller@newkirklaw.com

BOGAS & KONCIUS, PC
BRIAN E. KONCIUS (P69278)
Local Counsel for Plaintiffs
31700 Telegraph Road, Suite 160
Bingham Farms, MI 48025
Telephone: (248) 502-5001
bkoncius@kbogaslaw.com

ATTORNEYS FOR PLAINTIFFS